WINSTON & STRAWN LLP
NEAL R. MARDER (*Admitted pro hac vice*)
ROLF S. WOOLNER (*Admitted pro hac vice*)
DAVID L. WILSON III (*Admitted pro hac vice*)
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
nmarder@winston.com
rwoolner@winston.com
dlwilson@winston.com

GOODSILL ANDERSON QUINN & STIFEL LLP
WALTER C. DAVISON        4909-0
Email: wdavison@goodsill.com
JESSICA M. MICKELSEN        8944-0
Email: jmickelsen@goodsill.com
1099 Alakea Street, Suite 1800
Honolulu, HI 96813
Telephone: (808) 547-5600
Facsimile: (808) 547-5880

Attorneys for Defendant
W2007 WKH HOLDINGS, LLC
F/K/A W2007 WAIKIKI HOLDINGS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re | Bankruptcy Case No. 05-50011 |
| AZABU BUILDING COMPANY, LTD., a.k.a. AZABU TATEMONO, K.K., | (Chapter 11) |
| Debtor. | |
| AZABU LIQUIDATING TRUST, | Adv. Pro. No. 10-90087 |
| Plaintiff, | |
| v. | |
| HYATT CORPORATION, a Delaware corporation; and W2007 WKH HOLDINGS, LLC f/k/a W2007 WAIKIKI HOLDINGS, LLC, A Delaware limited liability company, | **ANSWER OF DEFENDANT W2007 WKH HOLDINGS, LLC F/K/A W2007 WAIKIKI HOLDINGS, LLC TO COMPLAINT FOR MONEY DUE UNDER ACQUISITION AGREEMENT; COUNTERCLAIM AGAINST PLAINTIFF AZABU LIQUIDATING TRUST; EXHIBIT "A"** |
| Defendants. | |
| W2007 WKH HOLDINGS, LLC f/k/a W2007 WAIKIKI HOLDINGS, LLC, Counter-Claimant | |
| v. | |
| AZABU LIQUIDATING TRUST, Counter-Defendant | |

## ANSWER OF DEFENDANT W2007 WKH HOLDINGS, LLC F/K/A W2007 WAIKIKI HOLDINGS, LLC TO COMPLAINT FOR MONEY DUE UNDER ACQUISITION AGREEMENT

Defendant, W2007 WKH Holdings, LLC f/k/a W2007 Waikiki Holdings, LLC ("Defendant" or "WKH Holdings"), as and for its answer to the Complaint (the "Complaint") filed by Plaintiff Azabu Liquidating Trust ("Plaintiff"), and for Defendant's Counterclaims against Plaintiff, alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  The DEBTOR was a corporation organized under the laws of the country of Japan, and was the debtor and debtor in possession in the above-captioned chapter 11 case. The above-captioned chapter 11 case was commenced by the filing of an involuntary petition on November 10, 2005 (the "Petition Date") before the United States Bankruptcy Court for the District of Hawaii (the "Court"). On February 1, 2006, the DEBTOR consented to the entry of an order for relief, which the Court entered on February 1, 2006.

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint.

2.  The DEBTOR's primary assets were the Hyatt Regency Resort & Spa (the "Hotel") and the stock of Azabu USA Corp. ("AUSA").

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint.

3.     On June 14, 2007, this Court confirmed the "Debtor's and Official Committee of Unsecured Creditor's Second Amended Joint Chapter 11 Plan of Reorganization for Azabu Buildings Co., Ltd., a.k.a. Azabu Tatemono K.K. and Subsequent Filing Entities as of April 23, 2007" (the "Plan"). The Plan was premised on the sale of the DEBTOR's equity to the BUYER, in exchange for $445 million, under the "Acquisition Agreement by and between Azabu Buildings Company, Ltd a/k/a Azabu Tatemono K.K. and Hyatt Corporation," as subsequently amended (the "Acquisition Agreement").

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, except admits the existence of the Acquisition Agreement and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

4.     The PLAINTIFF is a trust formed under the laws of Hawaii, pursuant to the Plan and the "Azabu Liquidating Trust Agreement." PLAINTIFF is a party in interest with standing to object to claims and assert claims on behalf of the DEBTOR's estate, and on its own behalf, pursuant to the Plan and the order

confirming the Plan. The PLAINTIFF is the successor to the DEBTOR's rights under the Acquisition Agreement.

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint and respectfully refers the Court to the documents referenced in Paragraph 4 of the Complaint for a complete and accurate statement of their contents.

5.     HYATT is a corporation organized under the laws of Delaware. HYATT was the original buyer under the Acquisition Agreement.

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, except admits that Hyatt Corporation ("Hyatt") is a party to the Acquisition Agreement, and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

6.     At all relevant times prior to the Closing, HYATT managed the Hotel for the DEBTOR pursuant to a Management Agreement dated as of May 3, 1973, as amended (the "Management Agreement").

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint and respectfully refers the Court to the Management Agreement for a complete and accurate statement of its contents.

7.    BUYER is a limited liability company organized under the laws of Delaware, and is the successor in interest to W2007 Waikiki Holdings, LLC. HYATT assigned its rights and interests under the Acquisition Agreement to BUYER and BUYER assumed all of HYATT's obligations under the Acquisition Agreement.

**ANSWER**:  Defendant denies the allegations of Paragraph 7 of the Complaint, except admits and avers that W2007 WKH Holdings, LLC f/k/a W2007 Waikiki Holdings, LLC is a Delaware limited liability company and that on February 7, 2007, Hyatt and Defendant executed that certain "Assumption and Assignment of Acquisition Agreement" (the "Assignment Agreement"). Defendant respectfully refers the Court to the Assignment Agreement and the Acquisition Agreement for a complete and accurate statement of their contents.

8.    PLAINTIFF is informed and believes and based on that information and belief alleges that HYATT owns an equity interest in BUYER and manages the Hotel for BUYER.

**ANSWER**:  Defendant denies the allegations of Paragraph 8 of the Complaint, except admits and avers that Hyatt owns an equity interest in Defendant and that Hyatt and Defendant have entered into a management agreement relating to the Hotel.

9. By executing, or succeeding to the rights and interests created by, the Acquisition Agreement (as defined in paragraph 16 herein), the PLAINTIFF and the DEFENDANTS expressly submitted to the jurisdiction of this Court, and agreed not to bring an action to enforce the Acquisition Agreement in any other court, pursuant to section 9.14 of the Acquisition Agreement, which provides, in part, as follows:

> Each of the Parties submits to the jurisdiction of the Bankruptcy Court, in any action or proceeding arising out of or relating to this Agreement and agrees that all claims in respect of the action or proceeding may be heard and determined in any such court. Each Party also agrees not to bring any action or proceeding arising out of or relating to this Agreement in any other court.

**ANSWER**: Defendant states that the allegations set forth in Paragraph 9 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required. To the extent that an answer is required, Defendant denies the allegations set forth in Paragraph 9 of the Complaint, except admits and avers, for the purposes of this action only, that Defendant does not challenge the jurisdiction of this Court. Defendant respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

10. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a); 157(b)(1); 157(b)(2)(A), (L), and (0); and 1334.

**ANSWER**:  Defendant states that the allegations set forth in Paragraph 10 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required.  To the extent that an answer is required, Defendant admits and avers, for the purposes of this action only, that Defendant does not challenge the jurisdiction of this Court.

11.     PLAINTIFFS' claims for relief constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (L), (N), and (0).

**ANSWER**:  Defendant states that the allegations set forth in Paragraph 11 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required.  To the extent that an answer is required, Defendant admits and avers, for the purposes of this action only, that Defendant does not challenge the jurisdiction of this Court.

12.     Venue is proper in the Court pursuant to 28 U.S.C. § 1409.

**ANSWER**:  Defendant states that the allegations set forth in Paragraph 12 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required.  To the extent that an answer is required, Defendant admits and avers, for the purposes of this action only, that Defendant does not challenge venue in this judicial district.

## GENERAL ALLEGATIONS

13.     On February 7, 2007, after several months of negotiation, the

DEBTOR and HYATT executed the original version of the Acquisition Agreement

(the "Original Agreement," a copy of which is attached hereto as Exhibit "1").

PLAINTIFF is informed and believes and based on that information and belief

alleges that, on the same date, (a) HYATT assigned its rights and interests under

the Acquisition Agreement to the BUYER, and (b) BUYER assumed all

obligations of HYATT under the Original Agreement.

**ANSWER**:  Defendant denies the allegations of Paragraph 13 of the

Complaint, except admits and avers that the Acquisition Agreement, a purported

copy of which is attached to the Complaint as Exhibit 1, is dated February 7, 2007

by and between the Debtor and Hyatt and that on February 7, 2007, Hyatt and

Defendant executed the Assignment Agreement.  Defendant respectfully refers the

Court to the Acquisition Agreement and Assignment Agreement for a complete

and accurate statement of their contents.

14.     HYATT remains liable for claims arising out of the Acquisition

Agreement as a matter of law, and as a result of section 9.4 of the Acquisition

Agreement, which states that, in the event HYATT assigned its rights and interests

under the Acquisition Agreement to BUYER, HYATT "nonetheless shall remain

responsible for the performance of all of its obligations" under the Acquisition Agreement.

   **ANSWER**:  Defendant states that the allegations set forth in Paragraph 14 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required.  To the extent that an answer is required, Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

   15.   The Original Agreement provided that, on the satisfaction of all of the conditions set forth in Article 7 of the Acquisition Agreement, the BUYER would pay $445 million in exchange for all shares of the reorganized DEBTOR ("NewCo").  See Original Agreement at §§ 2.1 and 2.2.

   **ANSWER**:  Defendant states that the allegations set forth in Paragraph 15 of the Complaint set forth Plaintiff's conclusions of law to which no answer is required.  To the extent that an answer is required, Defendant denies the allegations of Paragraph 15 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

   16.   The Original Agreement was subsequently amended four times as follows:

- The "First Amendment to Acquisition Agreement" (the "First Amendment") was dated as of March 14, 2007 and approved by Court order entered May 11, 2007, a copy of which is attached hereto as Exhibit "2";

- The "Second Amendment to Acquisition Agreement" (the "Second Amendment") was dated as of April 2007 and approved by order entered May 11, 2007, a copy of which is attached hereto as Exhibit "3";

- The "Third Amendment to Acquisition Agreement" (the "Third Amendment") was dated as of February 2008 and approved by order entered March 14, 2008, a copy of which is attached hereto as Exhibit "4"; and

- The "Fourth Amendment to Acquisition Agreement" (the "Fourth Amendment" and together with the First Amendment, the Second Amendment and the Third Amendment, the "Amendments") was dated as of May 2008 and approved by order entered May 13, 2008, a copy of which is attached hereto as Exhibit "5".

The Original Agreement, as amended by the Amendments, is referred to herein as the "Acquisition Agreement."

**ANSWER**: Defendant denies the allegations of Paragraph 16 of the Complaint, except admits and avers that the Acquisition Agreement was amended four times (each, an "Amendment") and that the Complaint attaches purported copies of such Amendments as Exhibit 2 through 5 thereto. Defendant respectfully refers the Court to the Amendments for a complete and accurate statement of their contents.

17. The Plan became effective on December 7, 2007 (the "Effective Date").

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint and respectfully refers the Court to the Plan for a complete and accurate statement of its contents.

18. The closing of the $415 million transaction contemplated by the amended Acquisition Agreement (the "Closing") occurred on July 16, 2008 (the "Closing Date") − after seven months of delay, imposed mostly by DEFENDANTS, during which, DEFENDANTS assured PLAINTIFF on numerous occasions that they would close, and then refused to close, at the original $445 million purchase price.

**ANSWER**: Defendant denies the allegations set forth in Paragraph 18 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint as to Hyatt, except admits and avers that the "Closing" (as that term is defined in the Acquisition Agreement) occurred on July 16, 2008 for a purchase price of $415 million.

## RESPONSE TO FIRST CLAIM FOR RELIEF
### (Recovery of Preferred Stock Claim)

19. PLAINTIFF hereby incorporates by reference as though fully set forth herein paragraphs 1 through 18 herein.

**ANSWER**: Defendant incorporates by reference its responses to

Paragraphs 1 through 18 of the Complaint.

20.     Pursuant to the conditions to Closing in the Acquisition

Agreement, the DEBTOR sold its Hotel-related personal property ("FF&E Sale")

to a newly created subsidiary ("FF&E Subsidiary") as follows:

> Debtor shall, in a series of related transactions in form
> and substance reasonably acceptable to Buyer and
> Debtor, . . . (i) Debtor shall sell the FF&E to the FF&E
> Subsidiary free and clear of all liens, claims and interest,
> in exchange for 100% of its common stock and a
> promissory note in the face amount to be agreed upon,
> that is secured by a first priority security interest in the
> FF&E ("FF&E Note"), (ii) Debtor shall lease the FF&E
> back from FF&E Subsidiary; (iii) the existing Liens on
> the FF&E at the time of that sale, if any, shall attach to
> the FF&E Note and the common stock of the FF&E
> Subsidiary, with the same validity, priority, force and
> effect as they currently have on the FF&E; and *(iv) as
> part of the same transaction and pursuant to the same
> agreement, Hyatt shall be issued 500 shares of preferred
> stock with a par value of $1,000 and a liquidation
> preference of $500,000 in satisfaction of $500,000 of fees
> to which it is entitled for services rendered or to be
> rendered under the Management Agreement.* The above
> series of related transactions are referred to herein as the
> "FF&E Sale."

Acquisition Agreement at section 5.11(g) (emphasis added).

**ANSWER**: Defendant states that the allegations set forth in

Paragraph 20 of the Complaint set forth Plaintiff's conclusions of law to which no

answer is required.  To the extent that an answer is required, Defendant denies

knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

21.    The FF&E Sale closed on or about June 25, 2007 and HYATT received 500 shares of preferred stock in FF&E Subsidiary.

**ANSWER**:  Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint.

22.    HYATT did not credit the DEBTOR or the PLAINTIFF with $500,000 of fees due HYATT under the Management Agreement, as required under section 5.11(g) of the Acquisition Agreement (the "Preferred Stock Claim"), nor did HYATT pay $500,000 to the PLAINTIFF or the DEBTOR after the DEBTOR paid in full the fees due on account of 2007.

**ANSWER**:  Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint.

23.    The Preferred Stock Claim totaling $500,000 is due to the PLAINTIFF from HYATT and remains unpaid.

**ANSWER**:  Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint.

## RESPONSE TO SECOND CLAIM FOR RELIEF
### (Recovery of Cash Reserve and Tax Refunds Net of Rent Adjustment Claim)

24.     PLAINTIFF hereby incorporates by reference as though fully set forth herein paragraphs 1 through 18 herein.

**ANSWER**: Defendant incorporates by reference its responses to Paragraphs 1 through 18 of the Complaint.

25.     The Original Agreement provided for the establishment of a "Cash Reserve" of $4 million, plus cash on hand at the Hotel and the King's Village property, owned by AUSA, as of the Closing Date, from which BUYER was allowed to pay certain expenses. BUYER was obligated to account to the PLAINTIFF for such expenditures and turnover any surplus in the Cash Reserve. The Cash Reserve is defined in section 2.5(a) of the Acquisition Agreement.

**ANSWER**: Defendant denies the allegations of Paragraph 25 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

26.     Section 2.5(a) of the Original Agreement provided, in relevant part, as follows:

> The Parties shall count the cash on hand at the Hotel and King's Village at 12:01 a.m. on the Closing Date and shall agree on the amount thereof at the Closing. This cash on hand, plus $4,000,000, shall constitute the "Cash Reserve," which shall become property of the Liquidating Trust but shall be retained by NewCo at Closing for the sole purpose of paying as they come due

15

administrative priority claims against Debtor Group incurred in the Ordinary Course of Business of the Hotel or King's Village that accrued prior to the Closing Date ("Ordinary Course Operational Claims"). Ordinary Course Operational Claims shall not include any claim under any Tenant Lease for a deposit refund or any claim that accrues after the Closing Date, including any claim that accrues under any Assumed Contract, after the Closing Date, or the proration of expenses that are paid in arrears. The Liquidating Trust will not receive a credit for the proration of expenses that accrue over time but are paid in advance; provided, however, *that Buyer, in its capacity as manager of the Hotel pursuant to the Management Agreement shall not incur or prepay any obligations outside of the Ordinary Course of Business prior to the Closing Date, but may cause administrative claimants to divide bills between the period before and after the Closing Date.*

Original Agreement at § 2.5(a) (emphasis added).

**ANSWER**: Defendant denies the allegations of Paragraph 26 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

27. Pursuant to section 1.K of the Second Amendment, the second sentence of section 2.5(a) was deleted:

This cash on hand, plus $4,000,000, shall constitute the "Cash Reserve," which shall become property of the Liquidating Trust but shall be retained by NewCo at Closing for the sole purpose of paying as they come due administrative priority claims against Debtor Group incurred in the Ordinary Course of Business of the Hotel or King's Village that accrued prior to the Closing Date ("Ordinary Course Operational Claims").

**ANSWER**: Defendant denies the allegations of Paragraph 27 of the Complaint and respectfully refers the Court to the Second Amendment for a complete and accurate statement of its contents.

28.     In place of the deleted sentence referenced in paragraph 27 herein, the following was added to section 2.5(a) pursuant to section 1.K of the Second Amendment:

> This cash on hand, plus $4,000,000, shall constitute the "Cash Reserve," which shall become property of the Liquidating Trust but shall be retained by NewCo at Closing for the *sole* purpose of paying as they come due *administrative claims and priority claims against Debtor Group, and general unsecured claims against Azabu USA, FF&E Subsidiary and NewCo*, incurred in the Ordinary Course of Business of the Hotel or King's Village that accrued prior to the Closing Date ("Ordinary Course Operational Claims").

Second Amendment at § 1.K (italics added).

**ANSWER**: Defendant denies the allegations of Paragraph 28 of the Complaint and respectfully refers the Court to the Second Amendment for a complete and accurate statement of its contents.

29.      The Acquisition Agreement contemplated a reconciliation of claims between the BUYER and the PLAINTIFF.  Section 2.5(a) of the Acquisition Agreement provided, in relevant part, that "[o]ne-hundred twenty (120) days after the Closing Date NewCo will provide the . . . Trust with an accounting showing the Ordinary Course Operational Claims that NewCo has paid.

If the Cash Reserve exceeds the Ordinary Course Operational Claims paid by or on behalf of NewCo, NewCo will turn over that excess at the time it provides the accounting."

**ANSWER**: Defendant denies the allegations of Paragraph 29 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

30.     On November 20, 2008, DEFENDANTS delivered an email to the PLAINTIFF setting forth DEFENDANTS' accounting pursuant to section 2.5(a) of the Acquisition Agreement (the "Reconciliation Statement"). DEFENDANTS contended that, in addition to the entire Cash Reserve, the PLAINTIFF was obligated to pay $2,047,271 to the BUYER. The BUYER's asserted "Ordinary Course Operational Claims" totaled $6,047,271, consisting of the following claims, as characterized by BUYER:

- Advance Deposits (discussed below): $950,819

- Disbursements for pre-Closing liabilities (a portion of which is discussed below): $3,373,322

- Outstanding checks as of 7/15/08 that cleared the bank: $296,109

- Payroll and related taxes liability as of 7/15/08: $840,618

- Vacations paid (discussed below): $586,404

**ANSWER**: Defendant denies the allegations of Paragraph 30 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth

of the allegations set forth in Paragraph 30 of the Complaint as to Hyatt, except admits and avers that, on or about November 20, 2008, Defendant provided Plaintiff with an accounting pursuant to Section 2.5(a) of the Acquisition Agreement (the "Accounting") and respectfully refers the Court to the Accounting for a complete and accurate statement of its contents.

31. The Trust objected to the DEFENDANTS' Reconciliation Statement by letter dated January 23, 2009, supplemented by a letter dated March 20, 2009, and the parties attempted for more than a year to resolve their differences consensually.

**ANSWER**: Defendant denies the allegations of Paragraph 31 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint as to Hyatt, except admits and avers that Plaintiff disputed portions of the Accounting and the parties have not reached a consensual resolution of such dispute, and respectfully refers the Court to the letters referred to in Paragraph 31 of the Complaint for a complete and accurate statement of their contents.

32. In the Reconciliation Statement, the DEFENDANTS omitted $236,989 in "cash on hand" as of the Closing Date, which should have been included in calculating the Cash Reserve. The Cash Reserve includes both the

$4,000,000 portion of the purchase price reserved, and the $236,989 of "cash on hand" as of the Closing Date.

**ANSWER**: Defendant denies the allegations of Paragraph 32 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint as to Hyatt, and respectfully refers the Court to the Accounting for a complete and accurate statement of its contents.

33.  The express terms of section 2.5(a) of the Acquisition Agreement limit use of the Cash Reserve to the sole purpose of paying: (a) administrative claims against "Debtor, Azabu USA, FF&E Subsidiary and NewCo" (the "Debtor Group"); (b) priority claims against the Debtor Group; and (c) general unsecured claims against AUSA, FF&E Subsidiary, and NewCo.

**ANSWER**: Defendant denies the allegations of Paragraph 33 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

34.  All administrative claims, priority claims, and general unsecured claims against AUSA, FF&E Subsidiary, and NewCo necessarily were incurred prior to the Effective Date and paid in the ordinary course of business before the Closing Date.  All of the amounts that the BUYER is seeking to pay from the Cash Reserve constitute expenses incurred after the Effective Date and

prior to the Closing Date. Such expenses are not recoverable from the Cash Reserve.

**ANSWER**: Defendant denies the allegations of Paragraph 34 of the Complaint.

35.    DEFENDANTS must return the entirety of the Cash Reserve of $4,236,989 to the PLAINTIFF.

**ANSWER**: Defendant denies the allegations of Paragraph 35 of the Complaint.

36.    The State of Hawaii delivered to BUYER refunds of taxes totaling $378,006, which had been paid by DEBTOR and AUSA, relating to fiscal years ending May 31, 2005 and May 31, 2006 (the "State Tax Refunds").

**ANSWER**: Defendant denies the allegations of Paragraph 36 of the Complaint, except admits and avers that the State of Hawaii has delivered tax refunds to Defendant (the "Hawaii Tax Refund").

37.    The Internal Revenue Service delivered to BUYER a refund of taxes, which had been paid by the DEBTOR, in the amount of $184,643 relating to a pre-Closing Date tax year (the "Federal Tax Refund" and with the State Tax Refunds, the "Tax Refunds").

**ANSWER**: Defendant denies the allegations of Paragraph 37 of the Complaint, except admits and avers that the Internal Revenue Service has delivered tax refunds to Defendant (the "Federal Tax Refund").

38. The right to receive the Tax Refunds was transferred from the DEBTOR to the PLAINTIFF. As of the date of this Complaint, BUYER has provided the Federal Tax Refund solely to allow the check to be cashed, reserving all right to ownership of the funds, and the PLAINTIFF is holding such funds pending resolution of this dispute. The BUYER has not delivered the State Tax Refunds to the PLAINTIFF. The Tax Refunds totaling $562,649 are the property of the PLAINTIFF and must be turned over.

**ANSWER**: Defendant denies the allegations of Paragraph 38 of the Complaint except admits and avers that it has provided the Federal Tax Refund to Plaintiff solely to allow the check to be cashed, reserving all right to ownership of the funds, and that it has not delivered the Hawaii Tax Refund to Plaintiff.

39. The PLAINTIFF concedes that it owes a $368,832 credit to BUYER on account of certain back rent (the "Rent Adjustment Claim").

**ANSWER**: Defendant admits the allegations of Paragraph 39 of the Complaint.

40.    Accordingly, DEFENDANTS must turnover to the PLAINTIFF $4,430,806 on account of the Cash Reserve, and the Tax Refunds, net of the Rent Adjustment Claim, summarized as follows:

Cash Reserve (including "cash on hand") ........................................... $4,236,989

Tax refunds ................................................................................... $562,649

Subtotal ......................................................................................... $4,799,638

Rent Adjustment Claim                                          ($368,832)

Net due to PLAINTIFF                                            $4,430,806

**ANSWER**: Defendant denies the allegations of Paragraph 40 of the Complaint.

## RESPONSE TO THIRD CLAIM FOR RELIEF
**(Recovery of Tax Refunds, and Cash Reserve Net of Deductible Ordinary Course Operational Claims and Rent Adjustment Claim)**

41.    PLAINTIFF hereby incorporates by reference as though fully set forth herein paragraphs 1 through 18, 25 through 32, and 36 through 39, herein.

**ANSWER**: Defendant incorporates by reference its responses to Paragraphs 1 through 18, 25 through 32, and 36 through 39 of the Complaint.

42.    Even if DEFENDANTS may charge post-Effective Date claims against the Cash Reserve, several of the claims set forth in the Reconciliation Statement do not fall within the scope of claims that may be deducted from the Cash Reserve under the Acquisition Agreement.

**ANSWER**: Defendant denies the allegations of Paragraph 42 of the Complaint and respectfully refers the Court to the Accounting and the Acquisition Agreement for a complete and accurate statement of their contents.

43.     In the Reconciliation Statement, DEFENDANTS asserted a claim for $950,819 on account of payments collected in advance for hotel services rendered after the Closing Date ("Advance Deposits").

**ANSWER**: Defendant denies the allegations of Paragraph 43 of the Complaint and respectfully refers the Court to the Accounting for a complete and accurate statement of its contents.

44.     The Acquisition Agreement provided for the transfer of all cash to the PLAINTIFF, with the exception of: (a) the cash on hand at the Hotel and King's Village; (b) the operating accounts that BUYER used to operate the Hotel; (c) "Rents Accounts," and (d) a "Sinking Fund."

**ANSWER**: Defendant denies the allegations of Paragraph 44 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

45.     Advance Deposits by customers do not fall into any of the exclusions to cash that was to be paid to the PLAINTIFF at Closing.

**ANSWER**: Defendant denies the allegations of Paragraph 45 of the Complaint.

46. Additionally, section 2.5(a) of the Acquisition Agreement permits the BUYER to assert a claim against the Cash Reserve only for Ordinary Course of Business Operational Claims that the BUYER actually paid. The BUYER did not "pay" claims relating to Advance Deposits.

**ANSWER**: Defendant denies the allegations of Paragraph 46 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

47. The Advance Deposits totaling $950,819 do not constitute an Ordinary Course Operational Claim that was paid by DEFENDANTS, which may be deducted from the Cash Reserve.

**ANSWER**: Defendant denies the allegations of Paragraph 47 of the Complaint.

48. In its Reconciliation Statement, BUYER also asserted a claim against the Cash Reserve totaling $778,317 on account of a management incentive fee ("Management Incentive Fee") that BUYER paid to HYATT on October 8, 2008 for management services during 2008.

**ANSWER**: Defendant denies the allegations of Paragraph 48 of the Complaint and respectfully refers the Court to the Accounting for a complete and accurate statement of its contents.

49.     Pursuant to the Management Agreement, which the DEBTOR was required to assume and assign to NewCo pursuant to paragraph E of the Third Amendment (Acquisition Agreement, § 9.18), HYATT's right to payment of the Management Incentive Fee did not arise until February 2009, on account of the prior calendar year.  Section 2.5(a) of the Acquisition Agreement expressly provides that "Ordinary Course Operational Claims shall not include . . . the proration of expenses that are paid in arrears."  Section 2.5(a) of the Acquisition Agreement also prohibited the BUYER from making prepayments outside of the ordinary course of business.

**ANSWER**:  Defendant denies the allegations of Paragraph 49 of the Complaint and respectfully refers the Court to the Acquisition Agreement and Management Agreement for a complete and accurate statement of their contents.

50.     Additionally, section 5.13 of the Acquisition Agreement provides as follows:

> Between the date of this Agreement and the Closing Date, except (i) as contemplated by the Confirmation Order or the Plan, or (ii) with the written consent or approval of the Debtor Group, Buyer shall not make any capital expenditure (or series of related capital expenditures) other than Permitted Capital Expenditures or accelerate the payment of any obligations relating to the operation of the Business outside the Ordinary Course of Business.

Acquisition Agreement at § 5.13 (emphasis added).

**ANSWER**: Defendant denies the allegations of Paragraph 50 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

51. The Management Incentive Fee was not paid in the ordinary course of business; rather, HYATT's Management Incentive Fee is an expense that was paid in arrears, which HYATT and the BUYER improperly accelerated, prepaid, or colluded to cause to come due in contravention of the Acquisition Agreement.

**ANSWER**: Defendant denies the allegations of Paragraph 51 of the Complaint.

52. DEFENDANTS accelerated, prepaid, or pro-rated HYATT's claim for the Management Incentive Fee totaling $778,317 in contravention of the Acquisition Agreement, such that it may not be asserted against the Cash Reserve.

**ANSWER**: Defendant denies the allegations of Paragraph 52 of the Complaint.

53. BUYER also asserted a claim in the Reconciliation Statement for $586,404 allegedly attributable to vacation pay earned by employees prior to the Closing Date and paid within one hundred twenty days thereafter ("Vacation Pay"). BUYER has not substantiated that the amounts claimed for Vacation Pay are attributable to payments made within one hundred twenty days of the Closing

Date on account of vacation time actually earned prior to the Closing Date and after the Petition Date.

**ANSWER**: Defendant denies the allegations of Paragraph 53 of the Complaint and respectfully refers the Court to the Accounting for a complete and accurate statement of its contents.

54.     The Vacation Pay totaling $586,404 does not constitute an Ordinary Course Operational Claim that was paid by DEFENDANTS, which may be deducted from the Cash Reserve.

**ANSWER**: Defendant denies the allegations of Paragraph 54 of the Complaint.

55.     Accordingly, DEFENDANTS must return $699,075 of the Cash Reserve to PLAINTIFF, summarized as follows:

| | |
|---|---|
| Cash Reserve (including "cash on hand") | $4,236,989 |
| Credits | |
| BUYER's Total Asserted Claims | ($6,047,271) |
| Less Adjustments | |
| Tax Refunds | $562,649 |
| Advance Deposits | $950,819 |
| Vacation Pay | $586,404 |
| Management Incentive Fee | $778,317 |
| Total Reductions in BUYER's Credit | $2,878,189 |

Total Credit Due to BUYER........................($2,169,082)

Cash Reserve Net of Credit.........................................................$1,067,907

Less

Rent Adjustment Claim................................($368,832)

Net due to PLAINTIFF from Cash Reserve.................................$699,075

**ANSWER**:  Defendant denies the allegations of Paragraph 55 of the Complaint.

## RESPONSE TO FOURTH CLAIM FOR RELIEF
### (Turnover of Portion of Capital Expenditure Reserves)

56.    PLAINTIFF hereby incorporates by reference as though fully set forth herein paragraphs 1 through 18 herein.

**ANSWER**:  Defendant incorporates by reference its responses to paragraphs 1 through 18 of the Complaint.

57.    Section 2.5(b) of the Acquisition Agreement concerns capital expenditures.  As amended by the Second Amendment, section 2.5(b) provides as follows:

> The Capital Expenditure Reserves shall be retained by NewCo and shall continue to be funded consistent with the current terms of the Management Agreement, whether or not the Management Agreement is modified or terminated after the Closing Date, through December 31, 2007 (including any contribution due to the Capital Expenditure Reserves based on revenues earned through December, 2007).  Hyatt Corporation, as manager, shall have the right to spend the cash deposited into the Capital Expenditure Reserves (whether in the past or in the

future) to pay expenses actually incurred during 2007 on any projects budgeted to be performed during 2007 based on the Budget to be provided by Buyer as Exhibit "E". Exhibit "E" may be revised from time to time by Hyatt Corporation without Debtor's consent, but with written notice to Debtor, so long as no cash, other than the contributions to be funded consistent with the current terms of the Management Agreement, is required to be deposited by Debtor into the Capital Expenditure Reserves. Any remaining balance in the Capital Expenditure Reserves after the deposit based on revenues received through December 2007 and payment of all Permitted Capital Expenditures actually incurred through February 28, 2008 that were originally budgeted to be incurred during 2007, shall be paid to the Liquidating Trust not later April 1, 2008.

Second Amendment at ¶ F (emphasis added).

**ANSWER**: Defendant denies the allegations of Paragraph 57 of the Complaint and respectfully refers the Court to the Acquisition Agreement and the Second Amendment for a complete and accurate statement of their contents.

58. Section 2.5(b) of the Acquisition Agreement, as amended by the Second Amendment, permitted HYATT to use the Capital Expenditure Reserves (defined in paragraph 60 herein) only for: (1) expenses actually incurred in 2007 or budgeted to be incurred in 2007 and actually incurred on or before February 28, 2008; and (b) "based on the budget to be provided" by BUYER. Hyatt was entitled to amend the budget, but it was required to give written notice of any such amendment to the DEBTOR.

**ANSWER**: Defendant denies the allegations of Paragraph 58 of the Complaint and respectfully refers the Court to the Acquisition Agreement and the Amendments for a complete and accurate statement of their contents.

59. The Acquisition Agreement defined "Capital Expenditure Reserves" to mean "all funded cash reserves held by Buyer, in its capacity as manager of the Hotel, pursuant to the Management Agreement and the Parties['] Ordinary Course of Business, which are intended to fund capital improvements at the Hotel and the acquisition of FF&E, including without limitation the 'F&E Fund' described in the Management Agreement." Acquisition Agreement at 2.

**ANSWER**: Defendant denies the allegations of Paragraph 59 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

60. HYATT held two funds in trust for the DEBTOR and the PLAINTIFF to be used, consistent with the limitations set forth in the Acquisition Agreement or as established in the course of dealing between HYATT and the DEBTOR, to pay for capital expenditures. These funds are referred to as the "F&E Fund" and the "Owner Funds." Together, the F&E Fund and the Owner Funds are referred to herein as the "Capital Expenditure Reserves."

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 60 of the Complaint and

respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

61.     Attached to the Second Amendment was Exhibit "E." Exhibit "E" lists the F&E Fund and the Owner Funds. According to Exhibit "E," $2,248,909 remained in the F&E Fund at the beginning of 2007. During 2007, the actual deposits, including interest and recoveries, into the F&E Fund were $5,284,912. This brought the total balance in the F&E Fund to $7,533,821 for 2007.

**ANSWER**: Defendant denies the allegations of Paragraph 61 of the Complaint and respectfully refers the Court to the Acquisition Agreement and the Amendments for a complete and accurate statement of their contents.

62.     As of January 1, 2007, HYATT had allocated $614,396 of the F&E Fund to specific committed projects carried forward from 2006 (the "2006 Carry-Forward Projects"). However, HYATT only spent $515,519 completing the 2006 Carry-Forward Projects. HYATT never provided notice that it would spend $98,877 that remained after completing the 2006 Carry-Forward Projects, and has not refunded that remaining balance to the PLAINTIFF.

**ANSWER**: Defendant denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 62 of the Complaint.

63.    Exhibit "E" listed expenditures for specific line items from the

F&E Fund for specific new 2007 projects that totaled $5,898,388, consisting of

Guestroom/Meeting Space/Restaurant expenditures ($4,904,965), Miscellaneous

($813,259), and Technology ($180,164).  Periodically, before the Closing Date,

HYATT notified the DEBTOR of changes in the allocations of these expenditures

as between these three categories, but at no time did HYATT ever provide the

DEBTOR with written notice that it intended to spend more than $5,898,388 from

the F&E Fund for specific new projects during 2007.  Therefore, even if HYATT

can establish that every dime it contends was spent on capital expenditures from

the F&E Fund was actually spent on the items budgeted to be spent during 2007,

the maximum amount deductible from the F&E Fund, excluding 2006 Carry-

Forward Projects, would have been the $5,898,388 for the specific line items listed

above.

**ANSWER**:  Defendant denies the allegations of Paragraph 63 of the

Complaint as to itself, denies knowledge sufficient to form a belief as to the truth

of the allegations set forth in Paragraph 63 of the Complaint as to Hyatt, and

respectfully refers the Court to the Acquisition Agreement for a complete and

accurate statement of its contents.

64.    HYATT never provided notice to the DEBTOR or PLAINTIFF

that it would spend more than the $5,898,388 budgeted for 2007, excluding 2006

Carryover Projects. The balance in the F&E Fund ($7,533,821) exceeded what was budgeted for specific line items in Exhibit "E" to the Acquisition Agreement by $1,635,433. From this Hyatt can deduct the $515,519 actually spent on 2006 Carry-Forward Projects, leaving a net balance due to PLAINTIFF from the F&E Fund of $1,119,914. HYATT has not refunded the $1,119,914 of additional money that was deposited in the F&E Fund, but which was never included in any budget provided to the DEBTOR or the PLAINTIFF or, in the case of the 2006 Carry-Forward Projects, was never actually spent.

**ANSWER**: Defendant denies the allegations of Paragraph 64 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 64 of the Complaint as to Hyatt, and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

65. In addition to the F&E Fund, Exhibit "E" states that there were Owner Funds, as of the end of 2006, of $1,015,025. Exhibit "E" reflects the amount that had been budgeted to be paid from the Owner Funds on "carry forward projects (committed)" as $381,874. This left a surplus of Owner Funds over budgeted expenditures therefrom of $633,151.

**ANSWER**: Defendant denies the allegations of Paragraph 65 of the Complaint and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

66.  The F&E Fund and Owner Funds were deposited into one account, but were separate for accounting purposes because the funds were historically treated differently by both the DEBTOR and HYATT. Although HYATT had some discretion with respect to the use of F&E Funds, the DEBTOR carefully reviewed any proposed expenditure of Owner Funds because both HYATT and the DEBTOR understood that Owner Funds could only be spent after the DEBTOR's approval and only for specifically identified projects, and were to be returned to the DEBTOR when such specifically identified projects were completed. DEFENDANTS owe the PLAINTIFF the excess balance in Owner Funds of $633,151.

**ANSWER**: Defendant denies the allegations of Paragraph 66 of the Complaint as to itself and denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of the Complaint as to Hyatt.

67.  For 2007, Exhibit "E" also contained a separate line of $1,274,276 labeled only "New Owner Projects Request for 2007." HYATT never provided a budget, or evidence of an approval by the DEBTOR, setting forth any specific "New Owner Projects" or items on which this $1,274,276 was purportedly

to be spent. PLAINTIFF contends that under the Acquisition Agreement and consistent with the parties' prior course of dealing this was not a "budget," but the DEFENDANTS contend that this catch-all single line was a budget. If the PLAINTIFF is correct, the DEFENDANTS owe the PLAINTIFF $1,753,065, consisting of the sum of (i) the excess in the F&E Fund set forth in paragraph 64 herein ($1,119,914) and (ii) the excess Owner Funds set forth in paragraph 65 herein ($633,151). Even if the DEFENDANTS were correct that the catch-all "New Owner Projects Request for 2007" with no categories or underlying budgets sufficed as a "budget," then the DEFENDANTS would still owe the PLAINTIFF $478,789 ($1,753,065, less $1,274,276).

**ANSWER**: Defendant denies the allegations of Paragraph 67 of the Complaint as to itself, denies knowledge sufficient to form a belief as to the truth of the allegations set forth in Paragraph 66 of the Complaint as to Hyatt, and respectfully refers the Court to the Acquisition Agreement for a complete and accurate statement of its contents.

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim for Relief)**

68.    The Complaint, and each claim for relief set forth therein, fails to state a claim against WKH Holdings upon which relief can be granted. Among other things, the First Claim for Relief does not assert a claim against or even reference WKH Holdings.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

69.     The Complaint, and each claim for relief set forth therein against WKH Holdings, is barred by the doctrine of laches. WKH Holdings and Hyatt, in accordance with the long-standing prior course of dealing between Hyatt and Plaintiff, provided Plaintiff with advance notice of the manner in which the "Capital Expenditure Reserves" (as that term is defined in the Acquisition Agreement) would be spent, in full. In the absence of any dispute or objection from Plaintiff (and in reliance on that fact), WKH Holding proceeded to make the expenditures in accordance with the notice given. As a result of its inaction, Plaintiff is now barred from seeking the return of the amounts alleged in the Complaint.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

70.     The Complaint, and each claim for relief set forth therein against WKH Holdings, is barred by the doctrine of estoppel (including equitable estoppel). WKH Holdings and Hyatt, in accordance with the long-standing prior course of dealing between Hyatt and Plaintiff, provided Plaintiff with advance notice of the manner in which the "Capital Expenditure Reserves" (as that term is defined in the Acquisition Agreement) would be spent, in full. In the absence of any dispute or objection from Plaintiff (and in reliance on that fact), WKH Holding

proceeded to make the expenditures in accordance with the notice given. As a result of its inaction, Plaintiff is now barred from seeking the return of the amounts alleged in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

71. The Complaint, and each claim for relief set forth therein against WKH Holdings, is barred by the doctrine of waiver. WKH Holdings and Hyatt, in accordance with the long-standing prior course of dealing between Hyatt and Plaintiff, provided Plaintiff with advance notice of the manner in which the "Capital Expenditure Reserves" (as that term is defined in the Acquisition Agreement) would be spent, in full. In the absence of any dispute or objection from Plaintiff (and in reliance on that fact), WKH Holding proceeded to make the expenditures in accordance with the notice given. As a result of its inaction, Plaintiff is now barred from seeking the return of the amounts alleged in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE
### (Acquiescence)

72. The Complaint, and each claim for relief set forth therein against WKH Holdings, is barred by the doctrine of acquiescence. WKH Holdings and Hyatt, in accordance with the long-standing prior course of dealing between Hyatt and Plaintiff, provided Plaintiff with advance notice of the manner in which

the "Capital Expenditure Reserves" (as that term is defined in the Acquisition Agreement) would be spent, in full. In the absence of any dispute or objection from Plaintiff (and in reliance on that fact), WKH Holding proceeded to make the expenditures in accordance with the notice given. As a result of its inaction, Plaintiff is now barred from seeking the return of the amounts alleged in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE
**(Setoff)**

73. To the extent WKH Holdings is indebted to Plaintiff, Defendant is entitled to offset such amounts against amounts for which Plaintiff is indebted to WKH Holdings pursuant to 11 U.S.C. § 553 or other applicable law.

## SEVENTH AFFIRMATIVE DEFENSE
**(Claims Barred by Contract)**

74. The Complaint, and each claim for relief set forth therein against WKH Holdings, is barred and/or limited by the terms and conditions of the Acquisition Agreement.

75. WKH Holdings presently has insufficient knowledge or information on which to form a belief as to whether additional affirmative defenses are applicable. Therefore, WKH Holdings does not waive, but rather reserves, the

right to assert additional affirmative defenses if and when it learns facts and circumstances making such affirmative defenses appropriate.

DATED: Honolulu, Hawaii, August 6, 2010.

/s/ David L. Wilson, III
Neal R. Marder
Rolf S. Woolner
David L. Wilson
WINSTON & STRAWN LLP

Walter C. Davison
Jessica M. Mickelsen
GOODSILL ANDERSON QUINN &
STIFEL LLP

Attorneys for Defendant
W2007 WKH Holdings, LLC
f/k/a W2007 Waikiki Holdings, LLC

| | |
|---|---|
| In re | Bankruptcy Case No. 05-50011 |
| AZABU BUILDING COMPANY, LTD., a.k.a. AZABU TATEMONO, K.K., | (Chapter 11) |
| Debtor. | |

| | |
|---|---|
| AZABU LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 10-90087 |
| HYATT CORPORATION, a Delaware corporation; and W2007 WKH HOLDINGS, LLC f/k/a W2007 WAIKIKI HOLDINGS, LLC, A Delaware limited liability company, | **COUNTERCLAIM AGAINST PLAINTIFF AZABU LIQUIDATING TRUST; EXHIBIT "A"** |
| Defendants. | |

| |
|---|
| W2007 WKH HOLDINGS, LLC f/k/a W2007 WAIKIKI HOLDINGS, LLC, Counter-Claimant |
| v. |
| AZABU LIQUIDATING TRUST, Counter-Defendant |

## COUNTERCLAIM AGAINST PLAINTIFF
## AZABU LIQUIDATING TRUST

Counterclaimant, WKH Holdings, alleges for its Counterclaims (the "Counterclaims") against the Azabu Liquidating Trust, successor in interest to Azabu Buildings Co, Ltd. (the "Debtor") in the above captioned bankruptcy case (the "Bankruptcy Case"), as follows:

## PRELIMINARY STATEMENT

1.      This dispute arises out of the sale (the "Sale") of the Hyatt Regency Waikiki Resort and Spa (the "Hotel") to WKH Holdings by the Debtor which was previously approved by this Court during the course of the Bankruptcy Case. The Sale is governed by that certain Acquisition Agreement dated February 7, 2007, as subsequently amended (the "Acquisition Agreement") between the Debtor and Hyatt Corporation ("Hyatt"). WKH Holdings holds all of Hyatt's right, title and interest in the Acquisition Agreement by way of a contemporaneously executed assignment. The Sale closed on June 16, 2008 for a purchase price of $415,000,000, at which point WKH Holdings took possession of the Hotel and related assets. WKH Holdings continues to own and operate the Hotel.

2.      Among other things, the Acquisition Agreement provided for the establishment of two cash reserve accounts to fund certain operating expenses and capital expenditures. The first, comprising over $4 million, was intended to

reimburse WKH Holdings for operational expenses that accrued prior to the

closing on June 16, 2008 that subsequently came due and were paid by WKH

Holdings. The second reserve in the amount of approximately $7.5 million was set

aside to pay for certain capital expenditures relating to the Hotel. The instant

dispute revolves around the entitlement to and proper disposition of these cash

reserves.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1). Likewise, this Court has

jurisdiction over the Counterclaims as they arise out of common facts, transactions,

or occurrences alleged in the Complaint initiating this adversary proceeding. The

claims for relief in the Complaint and the Counterclaims are core proceedings

pursuant to 28 U.S.C. § 157(b)(2).

4.     Upon information and belief, on or about November 10, 2005,

an involuntary petition was filed against Azabu Buildings Company, a.k.a. Azabu

Tatemono K.K., commencing the Bankruptcy Case in the United States

Bankruptcy Court for the District of Hawaii, styled In re Azabu Buildings

Company, a.k.a. Azabu Tatemono K.K., Case No. 05-50011.

## THE PARTIES

5.      Counterclaimant, W2007 WKH Holdings, LLC f/k/a W2007 Waikiki Holdings, LLC, is a limited liability company organized under the laws of the State of Delaware.

6.      WKH Holdings is informed and believes, and on that basis alleges, that the Plaintiff is a trust organized under the laws of Hawaii that was established as successor to the Debtor's rights and obligations under the Debtor's confirmed plan of reorganization (the "Plan").

## GENERAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

7.      Among other things, the Debtor owned and operated the Hyatt Regency Waikiki Resort and Spa and the nearby King's Village Shopping Center. On February 7, 2007, the Debtor and Hyatt entered into that certain Acquisition Agreement providing for the Sale of its business to Hyatt. Exhibit 1 to the Complaint purports to be a true and correct copy of the Acquisition Agreement and is incorporated herein by this reference. The Acquisition Agreement was subsequently amended four times. Each amendment was approved by order of the Bankruptcy Court. Exhibits 2 through 5 to the Complaint purport to be true and correct copies of the four amendments to the Acquisition Agreement and are incorporated herein by this reference. The Acquisition Agreement, as amended, shall hereinafter be referred to as the "Acquisition Agreement."

8.     On February 7, 2007, Hyatt and WKH Holdings also entered into that certain "Assumption and Assignment of Acquisition Agreement" (the "Assignment Agreement") pursuant to which Hyatt transferred its rights under the Acquisition Agreement to WKH Holdings.  Accordingly, WKH Holdings is successor to the rights and interests of Hyatt (i.e. the "Buyer") under the Acquisition Agreement.

9.     The Acquisition Agreement and Plan contemplated that the Debtor would form a new corporation under the laws of the state of Delaware ("NewCo") and that the Debtor would transfer substantially all of its assets to NewCo.  Shares in NewCo were to be issued to the "Buyer," as defined in the Acquisition Agreement.  The Sale closed on June 16, 2008 (the "Closing Date") after WKH Holdings funded the purchase price of $415,000,000 and received common stock in NewCo.

## FIRST COUNTERCLAIM
### (Declaratory Relief re Ownership of Cash Reserve)

10.     WKH Holdings realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 9 above, inclusive, as though fully set forth herein.

11.     The Acquisition Agreement, among other things, contemplated that the Debtor would establish a cash reserve (the "Cash Reserve") to reimburse WKH Holdings for operational expenses that accrued prior to the Closing Date

which subsequently came due and were paid by WKH Holdings. Section 2.5(a) of the Acquisition Agreement, as amended, provides, in pertinent part, as follows:

"The Parties shall count the cash on hand at the Hotel and King's Village at 12:01 a.m. on the Closing Date and shall agree on the amount thereof at the Closing. This cash on hand, plus $4,000,000 shall constitute the "*Cash Reserve*" which shall become property of the Liquidating Trust but shall be retained by [WKH Holdings] at Closing for the sole purpose of paying as they come due administrative claims and priority claims against Debtor Group, and general unsecured claims against Azabu USA, FF&E Subsidiary and [WKH Holdings], incurred in the Ordinary Course of Business at the Hotel or King's Village that accrued prior to the Closing Date ("*Ordinary Course Operational Claims*")… One-hundred twenty (120) days after the Closing Date [WKH Holdings] will provide the Liquidating Trust with an accounting showing the Ordinary Course Operational Claims that [WKH Holdings] has paid… The Liquidating Trust will have 60 days during which to review and approve the accounting or provide [WKH Holdings] with any objections the Liquidating Trust has to the accounting. If the Liquidating Trust and [WKH Holdings] cannot agree on the accounting within ninety (90) days after [WKH Holdings] presents the accounting to the Liquidating Trust, either party can bring the dispute over the accounting to the Bankruptcy Court for final resolution. Within five (5) business days of final resolution of the accounting if the Ordinary Course Operational Claims paid by [WKH Holdings] exceed the Cash Reserve, the Liquidating Trust will pay the difference to [WKH Holdings]…"

12.     WKH Holdings incurred and paid $6,047,270.97 in "Ordinary Course Operational Claims," as that term is defined in Section 2.5(a) of the Acquisition Agreement (the "Paid Ordinary Course Operational Claims"). On or

about November 20, 2008, WKH Holdings, in accordance with the Acquisition

Agreement, prepared an accounting of the Paid Ordinary Course Operational

Claims and delivered it to Plaintiff. Plaintiff disputed the accounting and the

parties attempted (unsuccessfully) to resolve the dispute. Attached as Exhibit A is

WKH Holdings' reconciliation statement (the "Reconciliation Statement")[1] setting

forth the Paid Ordinary Course Operational Claims and the amount WKH Holdings

asserts is owed in excess of the Cash Reserve.

      13.    The Cash Reserve is in the possession of WKH Holdings. As

evidenced by the Second and Third Claims for Relief in the Complaint, Plaintiff

asserts a property interest in the Cash Reserve and has brought this action to

request turnover of the entirety (or, in the alternative, a portion) of the Cash

Reserve. However, under Section 2.5(a) of the Acquisition Agreement, WKH

Holdings is entitled to keep the Cash Reserve because the Paid Ordinary Course

Operational Claims exceeded the Cash Reserve. Accordingly, WKH Holdings is

entitled to a judgment declaring the Cash Reserve property of WKH Holdings that

is not subject to Plaintiff's claims.

---

[1] The Reconciliation Statement attached as Exhibit A is substantially similar to the Accounting originally sent to Plaintiff on or about November 20, 2008 but has been modified to account for the additional "cash on hand" at King's Village and the hotel as of the Closing Date, bringing the Cash Reserve to $4,236,788.59.

## SECOND COUNTERCLAIM
### (Breach of Contract for Cash Reserve Deficiency and Rent Adjustment)

14.     WKH Holdings realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 13 above, inclusive, as though fully set forth herein.

15.     Under Section 2.5(a) of the Acquisition Agreement, Plaintiff is required to reimburse WKH Holdings to the extent Paid Ordinary Course Operational Claims exceed the Cash Reserve.  As reflected in the Reconciliation Statement, the Paid Ordinary Course Operational Claims ($6,047,270.97) substantially exceeded the Cash Reserve of $4,236,788.59.  Accordingly, Plaintiff is required to pay WKH Holdings an additional $1,810,482.38 (the "Cash Reserve Deficiency"), representing the difference between the Cash Reserve and the Paid Ordinary Course Operational Claims.

16.     Plaintiff admits that it owes WKH Holdings an additional $368,832 on account of back rent (the "Rent Adjustment Claim").  See Complaint at ¶ 39.

17.     Accordingly, WKH Holdings is entitled to recover $2,179,314.38 from Plaintiff on account of the Cash Reserve Deficiency and the Rent Adjustment Claim.

## PRAYER FOR RELIEF

WHEREFORE, Defendant requests that judgment be entered in its favor and against Plaintiff, as follows:

A.    That Plaintiff take nothing by reason of its Complaint and that the Complaint be dismissed with prejudice;

B.    That judgment be entered in favor of Defendant and that Defendant be awarded all relief sought by its Counterclaims (including all damages and relief requested therein, as well as prejudgment interest on all such sums at the legal rate);

C.    That Defendant be awarded such other and further relief as is appropriate under the circumstances.

DATED: Honolulu, Hawaii, August 6, 2010.

/s/ David L. Wilson, III
Neal R. Marder
Rolf S. Woolner
David L. Wilson
WINSTON & STRAWN LLP


Walter C. Davison
Jessica M. Mickelsen
GOODSILL ANDERSON QUINN &
STIFEL LLP

Attorneys for Defendant
W2007 WKH Holdings, LLC
f/k/a W2007 Waikiki Holdings, LLC